UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**CENTRAL DIVISION at FRANKFORT**

| | | |
|---|---|---|
| BETTY FAYE TRIPLETT, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| v. | ) | Civil Case No. |
| | ) | 3:12-cv-42-JMH |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION & ORDER** |
| SECURITY, | ) | |
| | ) | |
|     Defendant. | ) | |

\*\*\*

This matter is before the Court upon cross-motions for summary judgment on Plaintiff's appeal of the Commissioner's denial of her application for disability insurance benefits. [Tr. 21—31].[1]   The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

**I.   OVERVIEW OF THE PROCESS AND THE INSTANT MATTER**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

> 1.   An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1] These are not traditional Rule 56 motions for summary judgment.  Rather, it is a procedural device by which the parties bring the administrative record before the Court.

2.   An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3.   If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4.   If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work.  If the claimant is able to continue to do this previous work, then he is not disabled.

5.   If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work.  If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.*   "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary."  *Id.*

In the instant matter, the ALJ considered Plaintiff's claim in accordance with the five-step sequential evaluation process.  [Tr. 21—31].  He first determined that

2

Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 23]. Under step two, the ALJ found that Plaintiff had seven medically determinable severe impairments, including residual injuries sustained in a motor vehicle accident on August 30, 2006, osteoarthritis, osteoporosis, cardiac condition, borderline intellectual functioning, anxiety, and depression. [Tr. 24].

After deciding that Plaintiff's impairments did not equal a listed impairment under step three, the ALJ proceeded to step four and found that Plaintiff has a residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b). [Tr. 27—28]. Although the ALJ found that Plaintiff cannot perform her past relevant work with this RFC, he determined with the assistance of a vocational expert that other work exists in significant numbers nationally and across the state that Plaintiff can perform in her condition. [Tr. 28—31]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 31].

In this appeal, Plaintiff primarily argues that the Commissioner's decision is not supported by substantial evidence of record. She first argues that the ALJ improperly evaluated her impairments and improperly

3

calculated her RFC by focusing his analysis on the misdiagnosis of demyelinating syndrome in lieu of other abnormalities that were "shown by medically acceptable clinical and laboratory diagnostic techniques."  20 CFR § 404.1508.   Further, Plaintiff argues that the ALJ did not give appropriate deference to the opinions of Plaintiff's treating physicians, Drs. Durham and Nukes, and Plaintiff's non-treating consultative examiner, Dr. Chugh, throughout his analysis, but gave too much deference to two reviewing state consultative examiners, Drs. Rennie and Witkind. Finally, Plaintiff contends that the ALJ erred by failing to give any specific reasons as to why he discounted Plaintiff's credibility.   The Court has considered arguments by Plaintiff and the Commissioner, as well as the administrative record, and, for the reasons stated below, affirms the Commissioner's decision.

## II.  STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence,

42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, *see Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

## III. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is currently forty-nine years old with four years of college education. [Tr. 100—01]. She has past work experience as a Licensed Practical Nurse (LPN) and a wedding cake decorator. [Tr. 101, 104]. Plaintiff filed for disability under Title II on January 13, 2009, alleging disability beginning on August 6, 2006. [Tr. 21]. The claim was denied both initially on June 30, 2009, and upon reconsideration on November 21, 2009. [Tr. 21]. Thereafter, Plaintiff requested a hearing with the ALJ, and three separate hearings were conducted on September 23, 2010, June 16, 2011, and December 5, 2011. [Tr. 21]. The ALJ issued an unfavorable decision denying disability on December 27, 2011. [Tr. 31].

Plaintiff last worked in August, 2006, until she was involved in a motor vehicle accident with a tractor-

trailer.   [Tr. 101].   As a result of the accident, Plaintiff has rods in both her left arm and leg.  [Tr. 24]. Prior to her accident, she visited Dr. Theodore Nukes, a neurologist, for complaints of parasthesias in her legs. [Tr. 25].   Dr. Nukes conducted a nerve conduction study which showed mild evidence, but was not diagnostic, of demyelinating sensory polyneuropathy.  [Tr. 26].  A lumbar puncture test later performed on Plaintiff showed no evidence of demyelinating syndrome.   [Tr.   722]. Plaintiff's treating physician, Dr. Tammy Durham, adopted Dr. Nukes's opinion as a diagnosis of demyelinating syndrome and began treating her for it.  [Tr. 24].  Dr. Durham also treated Plaintiff for osteoarthritis, osteoporosis, anxiety and depression.

In evaluating Plaintiff's claims, the ALJ had the benefit of treatment records of Plaintiff's treating physicians, Dr. Durham and Dr. Nukes.  Additionally, G. Stephen Perry, Ed. D., a consultative psychological examiner, Dr. Atul Chugh and Dr. Joshua McKenzie, two consultative medical examiners, and Dr. Laurie Rennie and Dr. Bruce G. Witkind, reviewing state agency medical consultants, also assessed Plaintiff's condition.

**IV. Analysis**

6

Plaintiff first argues that the ALJ improperly evaluated her impairments and improperly calculated her RFC by focusing his analysis on the misdiagnosis of demyelinating syndrome in lieu of other abnormalities that were "shown by medically acceptable clinical and laboratory diagnostic techniques." 20 CFR § 404.1508. Specifically, Plaintiff cites 20 C.F.R. § 404.1529(c)(2) for the proposition that an ALJ must consider objective medical evidence when evaluating Plaintiff's claim, including "evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." § 404.1529(c)(2). Using this regulation, she somehow concludes that because the ALJ spent a great deal of time discussing whether Plaintiff has demyelinating syndrome, he must not have considered specific tests conducted by Plaintiff's physicians that reveal that she has muscle weakness and coordination problems, among other things.

After reviewing the transcript and the ALJ's opinion, the court is puzzled by Plaintiff's rather illogical argument. First, with regard to Plaintiff's argument that the ALJ improperly evaluated her impairments, 20 CFR § 404.1520 requires the ALJ to determine whether a claimant has a medically determinable impairment that is "severe" or a combination of impairments that are "severe." §

7

404.1520.   The ALJ clearly engaged in this analysis in his opinion, finding that Plaintiff has seven severe impairments, including residual injuries sustained in a motor vehicle accident on August 30, 2006, osteoarthritis, osteoporosis, cardiac condition, borderline intellectual functioning, anxiety, and depression.   [Tr. 24].   The ALJ naturally spent time on demyelinating syndrome in this section since he determined that, unlike all of Plaintiff's other impairments, demyelinating syndrome was a misdiagnosis and, thus, not one of Plaintiff's severe impairments.   [Tr. 24—27].   Thus, Plaintiff's contention that the ALJ failed to properly evaluate her impairments is meritless.

Second, Plaintiff's argument that the ALJ failed to properly calculate her RFC because he overly focused on the demyelinating syndrome misdiagnosis is equally unavailing. Under 20 CFR § 404.1520(a)(4)(iv), the ALJ must calculate a claimant's RFC, or her "ability to do physical and mental work activities on a sustained basis despite limitations from her impairments."   § 404.1520(a)(4)(iv); [Tr. 23].   In making this finding, the ALJ has to consider all of the "relevant medical and other evidence," including a claimant's non-severe impairments.   20 CFR § 404.1545.

Again, the ALJ's opinion reveals that he followed this legal framework.  For example, he discussed contradicting reports from doctors about Plaintiff's muscle tone, muscle strength, ability to use rapid alternating movements, ability to lift and carry weight, and chest pain.  [Tr. 29].  He discussed Plaintiff's multiple fractures that she received in her 2006 accident, but explained that, according to treatment notes, there is no indication that the hardware surgically implanted in Plaintiff has malfunctioned in any way.  [Tr. 29].  He noted that while Plaintiff alleges that she has chest pain and cardiac problems, Dr. Durham, her treating physician, did not report that Plaintiff has any specific limitations from these problems.  [Tr. 29].

Further, the ALJ noted that Plaintiff claims to be mentally impaired, suffering from anxiety and depression; however, he pointed out that there is no evidence in the record that Plaintiff has ever been referred for psychiatric treatment and/or hospitalization for these impairments.  [Tr. 29].  He also noted that the psychiatric consultative examiner, Dr. Perry, opined that Plaintiff is capable of doing simple tasks, tolerating mildly stressful situations, and generally possesses the ability to complete work-related activities.  [Tr. 29].

Finally, the ALJ spent a significant amount of time considering Plaintiff's self-attested daily activities when determining Plaintiff's RFC. *See* 20 CFR § 404.1545(e) ("In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence, including the information described in § 404.1529(c)"); 20 CFR § 404.1529(c) (listing a claimant's daily activities as something the ALJ can consider).   For example, the ALJ discussed Plaintiff's ability to grocery shop and carry her groceries, noted that she lives alone, can take care of her personal needs, prepares her own meals, cleans her house, does laundry, drives, and has a boyfriend and friends. [Tr. 29—30].   She also does low-impact exercises and paints with oils in her free time.   [Tr. 114; 117—18].   Therefore, contrary to Plaintiff's argument, the ALJ did not spend "almost 100 percent of his evaluation on disproving the existence of a demyelinating syndrome."   [D.E. 10, Plaintiff's Brief, at 4].   Plaintiff's argument that the ALJ erred when calculating her RFC is meritless.

Plaintiff's second argument is that the ALJ failed to give appropriate deference to Plaintiff's treating physicians, Dr. Durham and Dr. Nukes, and a one-time examining physician, Dr. Chugh.   Instead, Plaintiff argues

10

that the ALJ erroneously accepted the opinions of non-examining state agency consultants, Drs. Rennie and Witkind, who opined that there was not any objective medical evidence that Plaintiff has demyelinating syndrome. However, Plaintiff's argument again falls short.

With regard to Plaintiff's treating physicians' opinions, it is true that under the "treating physician rule," a treating physician's opinion is normally entitled to substantial deference; however, it is also true that the ALJ is not bound to give that opinion controlling weight. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)); 20 C.F.R. § 404.1527(c)(2). Rather, controlling weight should only be given to a treating physician when his opinion is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Bogle v. Sullivan*, 998 F.2d 342, 347–48 (6th Cir. 1993) ("such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.").

In this case, objective medical evidence supports neither Dr. Durham's nor Dr. Nukes's opinions. Dr. Nukes, a neurologist, examined Plaintiff to determine whether she had demyelinating syndrome in 2005. [Tr. 724–31].

11

However, the initial nerve conduction study that Dr. Nukes used to test for demyelinating syndrome was mildly suggestive, but not diagnostic, of demyelinating sensory polyneuropathy. [Tr. 731]. Moreover, Dr. Nukes determined that Plaintiff was alert with normal attention span and concentration, had normal visual acuity and visual fields, intact extraocular movements, intact and symmetric facial sensations, normal strength (5/5) in all four extremities, normal tone, no atrophy, no abnormal movements, and normal gait and station. [Tr. 728]. Further, the results from Plaintiff's lumbar puncture, the primary diagnostic tool for demyelinating syndrome, were negative in 2006. [Tr. 722]. Therefore, to the extent that Dr. Nukes diagnosed Plaintiff with demyelinating syndrome, the objective medical evidence does not support his diagnosis.

Despite the fact that all of the objective testing indicated that Plaintiff did not have demyelinating syndrome, Dr. Durham, Plaintiff's family physician, reported that Plaintiff not only suffers from the disease, but also opined that her functioning is extremely limited as a result. [Tr. 446]. However, as explained, the objective evidence did not support this diagnosis, and there is no evidence in the record that Dr. Durham did any further diagnostic testing on her own. [Tr. 27].

12

Moreover, Dr. McKenzie, a consultative physician, examined Plaintiff in 2011, and his findings support that Plaintiff's neurological condition remains the same as it appeared in 2005 and 2006, as he reported that Plaintiff had good tone with 5/5 strength bilaterally in all muscle groups and her rapid alternating movements were intact without fatigue. [Tr. 733—35]. This evidence appropriately led the ALJ to conclude that the treating physicians' opinions were inconsistent with the record and he appropriately discounted their testimony.

Plaintiff also argues that the ALJ erred by discounting Dr. Chugh's testimony, but, because Dr. Chugh is a one-time consultative physician, the ALJ was free to reject his opinion without giving any reasons for doing so. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (noting that the SSA only requires ALJ's to give reasons for rejecting opinions of treating physicians, defined as a physician in an "ongoing treatment relationship" with the patient). Regardless, a review of the record shows that the ALJ did not err by discounting Dr. Chugh's opinions. First, Dr. Chugh's opinion is internally inconsistent, as his objective examination of Plaintiff does not support his conclusion that Plaintiff's impairments essentially render her sedentary. For example,

13

as Dr. Whitkin pointed out, if Plaintiff truly had demyelinating syndrome, her reflexes would not be normal, or would at least be worse than they have been in the past. [Tr. 54]. However, Dr. Chugh reported that her deep tendon reflexes were +2, or, in other words, the same as they have always been. [Tr. 705]. Moreover, Dr. Chugh's prescribed limitations for Plaintiff are utterly inconsistent with her level of activity. For example, while Dr. Chugh reported that Plaintiff is only capable of traveling as a passenger in a car, Plaintiff readily admitted at her hearing that she has a car and regularly drives. [Tr. 706; 100]. Dr. Chugh also reported that Plaintiff needs a cane to get around; however, Plaintiff came to her hearings without the assistance of a cane, and admitted that she does low-impact exercises. [Tr. 111; 117—18]. These inconsistencies support the ALJ's decision to discount Drs. Durham, Nukes, and Chugh's opinions in favor of the non-examining physicians.

Plaintiff's final contention, that the ALJ did not adequately explain the level of credibility that he assigned to Plaintiff's testimony, also fails. While an ALJ must consider a plaintiff's statements about her pain when determining whether she is disabled, "[d]iscounting credibility to a certain degree is appropriate where an ALJ

14

finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Furthermore, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* at 531 (*citing Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)).

In this case, the ALJ clearly explained that he partially discounted Plaintiff's credibility because the pain and symptoms that she alleged are inconsistent with both Plaintiff's testimony and the objective medical evidence in the record. For example, while Plaintiff claims on one hand that she has such pain that she cannot engage in any type of work whatsoever, she also lives alone, admits to grocery shopping, can take care of her personal needs, prepares her own meals, cleans her house, does laundry, drives, pays bills, has a boyfriend and friends, gets along with authority figures, does low-impact exercises, occasionally gets out in the yard, and paints with oils in her free time. [Tr. 29–30; 114; 117–18]. The ALJ appropriately discounted Plaintiff's credibility to the extent that her involvement in these daily activities are

15

inconsistent with her complaints of pain.  *See Walters*, 127 F.3d at 532 (*citing Blacha*, 927 F.2d at 231; *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 (6th Cir. 1986)) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.").

Plaintiff cites *Walston v. Gardner*, 381 F.2d 580 (6th Cir. 1967) for the proposition that Plaintiff's ability to engage in daily activities cannot be, in and of itself, a valid basis for discounting her credibility.  However, first, the claimant in *Walston* was objectively suffering a great deal more than Plaintiff, as every single doctor who examined him confirmed his testimony that he suffered great pain with every movement, and no doctor ever testified that he could engage in substantial gainful activity.  *Id.* at 586.  By contrast, some physicians in this case reported that Plaintiff's gait, movement and reflexes were normal. [Tr. 734—35; 725; 728; 705].  Dr. Whitkin also pointed out that the symptoms that Plaintiff often reported were subjective, and, thus, it is impossible to get objective medical evidence to substantiate her claims.  [Tr. 47]. Moreover, the ALJ did *not* solely rely on Plaintiff's ability to engage in daily activities when finding her incredible, as he also based his credibility finding on the

16

fact that the objective medical evidence fails to support her claim that she is incapable of light work.  [Tr. 30].

Generally, throughout Plaintiff's entire argument, she continuously comes back to her primary complaint that the ALJ overanalyzed whether she had demyelinating syndrome instead of deciding the case on the entire record. However, Plaintiff ignores the rather obvious fact that the ALJ spent a significant amount of time on demyelinating syndrome because whether or not she actually had the disease appears to have been the deciding factor in the ALJ's determination of whether or not Plaintiff is disabled within the meaning of the Social Security Act.  Through Plaintiff's ability to engage in daily activities, she has demonstrated that her remaining physical impairments—residual injuries from her car accident, osteoarthritis, osteoporosis, and cardiac condition—do not prevent her from engaging in light work.  Objective medical evidence supports this conclusion.  Indeed, none of the doctors that have examined Plaintiff have claimed that she is entirely incapable of working based on these *other* physical impairments; rather, it has always been the combination of impairments *along with* demyelinating syndrome that has led some of the physicians to conclude that she is incapable of working.  [Tr. 681—94; 704—06].  Furthermore, Plaintiff's

17

psychological examination revealed that she is capable of doing simple tasks, tolerating mildly stressful situations, and completing work-related activities. [Tr. 29]. Therefore, the ALJ did not err by engaging in a detailed analysis of whether Plaintiff has demyelinating syndrome, since Plaintiff's case turned upon the correctness or incorrectness of the diagnosis.

In conclusion, the objective evidence in this case did not establish that Plaintiff is disabled within the meaning of the Social Security Act, and substantial evidence supports the ALJ's decision.

**IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [DE 10] is **DENIED**; and

(2) that Defendant's Motion for Summary Judgment [DE 11] is **GRANTED**.

(3) that the Commissioner's final decision be, and the same hereby is, **AFFIRMED.**

This the 26th day of December, 2012.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge